# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

**STINGRAY PRESSURE PUMPING, LLC**            **PLAINTIFF**

v.            2:16-CV-00279-BRW

**EQT PRODUCTION COMPANY**            **DEFENDANT**

## ORDER

Pending is Defendant's Motion for Judgment as a Matter of Law or in the alternative Motion for a New Trial (Doc. No. 119). Plaintiff filed a Response.[1] Defendant filed a Reply.[2] Also pending is Defendant's Motion for Attorney's Fees (Doc. No. 127).

For the reasons set out below, Defendant's Motion for Judgment as a Matter of Law or in the alternative Motion for a New Trial is DENIED. Defendant's Motion for Attorney's Fees is also DENIED.

### I. BACKGROUND

In 2014 Plaintiff and Defendant entered negotiations for the performance of stimulation services for Defendant's natural gas well pads in Pennsylvania and West Virginia. They finalized a Master Services Agreement ("MSA") on September 2, 2014. Under the MSA, Plaintiff worked on three gas wells owned by Defendant. The MSA did not specifically outline the services performed or materials used in each specific well site. Instead, it required the Defendant to issue Purchase Orders identifying the project and specifications for each site. After completion at the well site, Plaintiff would submit an invoice to Defendant for the services completed. The parties had a working relationship from September of 2014 to October of 2015.

---

[1] Doc. No. 124.
[2] Doc. No. 131.

In November of 2014 Defendant noticed that Plaintiff was billing for goat head services,[3] which were supposed to be in the base fee, and notified Plaintiff. The charges were quickly corrected. In March of 2015 Defendant sent an email questioning the additional charges for pump downs on the invoices asking, "Is the 'PUMP DOWN E-LINE SERVICE' on your invoice the same thing as '30 foot escort service $1,250' that is listed on the PO."[4] Plaintiff responded but no action was taken by either party, and Plaintiff continued to bill Defendant for pump down services. In October of 2015, the parties parted ways. Then, Defendant withheld payment of $1,651,260.00 for work performed under the MSA claiming that Plaintiff had impermissibly charged Defendant for pump down services listed as escort services on the invoices.

Plaintiff brought this action for breach of contract and violation of Pennsylvania's Contractor and Subcontractor Payment Act to recover the withheld payment of $1,651,260.00. Defendant counterclaimed for breach of the MSA and Purchase Orders for $676,250.00, which was the amount Defendant had paid for pump down services listed as escort services. Following a three-day jury trial, the jury found that both parties had breached the contract, Plaintiff had mitigated its damages and Defendant had not. The jury awarded Plaintiff $1,651,250.00 and Defendant $676,250.00.

## II.   STANDARD

After a jury trial, a court may grant a motion for judgment as a matter of law if it determines that there was no "legally sufficient evidentiary basis for a reasonable jury to have found for a particular party on an issue," and that, without a favorable finding on that issue, the party cannot maintain his claim under controlling law.[5] A judgment as a matter of law should

---

[3] A goat head is the equipment used on frac tree and frac stack during fracturing work.
[4] D. Ex. 34, P. Ex. 20.
[5] *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 791 (E.D. Pa. 2012) (citing Fed. R. Civ. P. 50(a)(1)).

only be granted when "viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find [for the non-movant]."[6] In ruling on a renewed motion for judgment as a matter of law, the Court may: (1) allow judgment on the verdict if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.[7] Contrasting evidence from which different and conflicting conclusions might be drawn is not sufficient to overturn a jury's verdict, as the jury is presumed to have evaluated that contradictory evidence and to have properly decided the matter one way or another.[8]

Granting a new trial following a jury verdict is within the discretion of the district court and such requests are disfavored.[9] The Court's inquiry in evaluating a motion for a new trial on the basis of trial error is twofold. It must first determine whether an error was made in the course of the trial, and then it must determine "whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice."[10] "If the evidence in the record, viewed from the standpoint of the successful party, is sufficient to support the jury verdict, a new trial is not warranted merely because the jury could have reached a different result."[11]

## III. DISCUSSION

### A. Judgment as a Matter of Law

Defendant claims judgment as a matter of law is appropriate because Plaintiff failed to show that it breached the terms of the contract, and no reasonable juror could find the terms "escort service" referred to "pump downs" on the invoices. Plaintiff produced evidence that

---

[6] *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 568 (3d Cir. 2002).
[7] Fed. R. Civ. P. 50(b).
[8] *Firemans Fund Ins. Co. v. Videfreeze Corp*, 540 F.2d 1171, 1178 (3d Cir. 1976).
[9] *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 792 (E.D. Pa. 2012).
[10] *Farra v. Stanley–Bostitch, Inc.*, 838 F. Supp. 1021, 1026 (E.D. Pa. 1993).
[11] *Gebhardt v. Wilson Freight Forwarding Co*, 348 F.2d 129, 133 (3d Cir. 1965).

pump down services were known by different names; pump down services were not part of the base price; and Plaintiff was permitted to charge an additional fee for the pump down services. When "viewing the evidence in the light most favorable to the non-movant and giving it advantage of every fair and reasonable inference,"[12] I find Plaintiff produced sufficient evidence for reasonable juror to find, and did find, Defendant modified the contract.

### B. Alleged Court Error in Evidentiary Rulings

Defendant argues that if judgment as a matter of law was not granted, it is entitled to a new trial because I allowed the jury to consider course-of-dealing evidence, evidence of improper goat head charges being corrected, evidence from the pre-frac meeting, and evidence suggesting the contract allowed for charges related to pump downs.

#### 1. Course-of-Dealing and Evidence of Pump Down Service Charges

Defendant argues that I should have excluded evidence pertaining to Defendant's payment of invoices and email containing the additional information about charges for pump down services, which constituted a course-of-dealing that modified the contract. It asserts the MSA prohibits any modifications that do not strictly comply with the MSA. Plaintiff argues that the contract contained ambiguities and the testimony provided that Plaintiff believed pump down escort services were outside the base cost.

It is well established that "[a] written contract which is not for the sale of goods may be modified orally, even when the written contract provides that modifications may only be made in writing."[13] It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed, or a new one substituted; and

---

[12] *Gagliardo*, 311 F.3d at 568.
[13] *Somerset Community Hosp. v. Allan B. Mitchell & Associates, Inc.*, 685 A.2d 141, 146 (Pa. 1996).

this may be shown by parol evidence, by showing either an express agreement, or actions necessarily involving the alteration.[14]

Evidence at trial showed that the bids Plaintiff submitted for high rate stimulation services did not include any charge for pump down services. In the bid documents, Plaintiff provided $0 for the e-line pump down in the quantity section, but only upon issuance of a Purchase Order at each site would Plaintiff know the total scope of work the requested by Defendant. Defendant claims that Plaintiff was not allowed to charge for pump downs because it was included in the stage cost, and the charges for pump downs were only paid out of mistake.

Testimony provided by Plaintiff and Defendant showed that Plaintiff would not know whether it was to perform the pump down at any given site before being provided the Purchase Order. After receiving the Purchase Order Plaintiff would fulfill the work obligation and submit the invoice to Defendant. Plaintiff submitted hundreds of invoices to Defendant, and Mr. Graybill noticed the charges on an invoice.

In March of 2015 Mr. Graybill asked in an email, "Is the 'PUMP DOWN E-LINE SERVICE' on your invoice the same thing as "30 foot escort service $1,250?' that is listed on the PO."[15] Plaintiff's employee, Jeremy Makepeace, explained the charges to Mr. Graybill. The charges for pump down services, or escort services, continued and was not mentioned again until August of 2015. This was different from the goat head charges discussed below, which were noticed by an EQT employee and subsequently stopped. I find the evidence of course-of-dealing was properly admitted.

---

[14] *Halloway v. Frick*, 149 Pa. 178, 180 (1892).
[15] D. Ex. 34; P. Ex. 20.

### 2. Goat Head Charges

Defendant argues that Plaintiff should not have been able to present evidence that in November of 2014 EQT employees caught an impermissible separate line item being charged on invoices. Defendant claims that this evidence was not relevant,[16] or in the alternative, that if it was relevant, it should have been precluded because it had the tendency to confuse the jury.[17] Plaintiff argues that it was relevant because Defendant claimed it paid for the escort service only by mistake.

Assessing probative value of proffered evidence and weighing any factors counseling against admissibility, such as danger of unfair prejudice, is matter first for the district court's sound judgment.[18] The evidence showed that Defendant would produce a work order for Plaintiff. After completion, Plaintiff provided Defendant an invoice for all work completed and the price for each job. Defendant would have an employee look over the invoice to make sure it was correct. Defendant noticed an impermissible charge and it was corrected. Defendant checked the invoices to make sure that they were being billed for the proper work, and if the proper work and billing was not being completed, it was changed. I find the evidence was relevant, and I do not believe it confused the jury.

### 3. Pre-frac meeting

Defendant argues that I should have prohibited Plaintiff from introducing evidence of discussions that occurred at a "pre-frac" meeting between the parties because it is barred by the parol evidence rule and that it was inadmissible hearsay.[19] Plaintiff argues the pre-frac meeting

---

[16] Fed. R. Evid. 401.
[17] Fed. R. Evid. 403.
[18] *Sprint/United Management Co. v. Mendelsohn*, 128 S. Ct. 1140 (2008).
[19] Fed. R. Evid. 801.

6

evidence should be allowed because it provides clarity for the ambiguity in the MSA and that it was not inadmissible hearsay.[20]

"Where a term in the parties' contract is ambiguous, 'parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances.'"[21] "While a patent ambiguity appears on the face of the instrument, 'a latent ambiguity arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous.'"[22] If the terms of a contract are ambiguous, extrinsic and parol evidence is admissible to interpret the ambiguous portions of the contract.[23] "A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts."[24]

The MSA contained ambiguity because it did not specify that 30 and 60 foot cluster escort services, or pump downs, were not included in the base charge for stimulation services. Plaintiff billed, as was shown on their invoices submitted to Defendant, for these services. Defendant paid Plaintiff for these services for over ten months and even noticed that they were being charged for these services as indicated by the March email. The pre-frac conversations provided clarity to the ambiguous language and the collateral circumstances. Moreover, hearsay statements at trial that an employee of Defendant notified Plaintiff that it wanted for Plaintiff to

---

[20] Fed. R. Evid. 801(d)(2).
[21] *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 (Pa. 2004) (quoting *Estate of Herr*, 161 A.2d 32, 34 (Pa. 1960).
[22] *Id.* (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995)).
[23] *Murphy v. Duquesne University of the Holy Ghost*, 565 Pa. 571, 591 (2001).
[24] *Id.*

7

do the pump down process is admissible under Federal Rule of Evidence 801(d)(2). The hearsay statement is considered a statement offered against an opposing party was made by the party's agent or employee on a matter within the scope of relationship and while such relationship existed. This information was relevant and was properly allowed into evidence.

### 4. Improper Jury Instructions

#### a. Apparent Authority and Imputed Knowledge

Defendant argues that I erroneously charged the jury on the concepts of apparent authority and imputed knowledge. Defendant contends that there was no evidence in the case that its agent or employee had the ability to modify the contract, or that it has any imputed knowledge as to any modification of the contract. Plaintiff argues I properly instructed the jury on the law of apparent authority and imputed knowledge.

The charge, taken as a whole and viewed in the light of the evidence, must fairly and adequately submit the issues in the case to the jury.[25] Under Pennsylvania law, "[k]nowledge of an agent, acting with the scope of his authority, real or apparent, may be imputed to the principal, and thus, knowledge of the agent is knowledge of the principal."[26] "Apparent authority results from conduct by a principal which causes a third person to believe that a person has authority to enter negotiations or make representations as his agent."[27] Also, "if a third person changes his position in reasonable reliance on the principal's conduct, the principal is then estopped from denying the authority of the agent."[28]

Testimony at trial showed that Mr. Graybill was acting as one of Defendant's agents in dealing with Plaintiff. He noticed that Plaintiff was charging for an escort service for which he

---

[25] *Bennis v. Gable*, 823 F.2d 723, 727 (3d Cir. 1987).
[26] *V-Tech Services, Inc. v. Street*, 72 A.3d 270, 279 (Pa. Super. Ct. 2013).
[27] *Stallo v. Insurance Placement Facility of Pennsylvania*, 359 Pa. Super. 157, 162 (1986).
[28] *Id.* at 163.

8

thought was a pump down charge. The Purchase Orders and Invoices between the parties outlined the services to be provided. The evidence showed Mr. Graybill learned about the charges listed as escort service pump downs, questioned the charges, had an alleged conversation with Mr. Makepeace, and did nothing about it. Plaintiff continued to provide pump downs from March of 2015 until August of 2015. As an agent, Mr. Graybill's knowledge of the charges imputed that knowledge onto Defendant.

### b. Mitigation

Defendant also argues that the mitigation instruction was inapplicable to this case. Plaintiff counters the mitigation instruction was appropriate because Defendant also breached the contract.

The injured party is not obligated to mitigate damages where both he and the liable party have an equal opportunity to reduce damages.[29] The burden of proving that losses could have been avoided by reasonable effort and expense must be borne by the party who has broken the contract.[30] Under Pennsylvania law:

> Where both the plaintiff and the defendant have had equal opportunity to reduce the damages by the same act and it is equally reasonable to expect the defendant to minimize damages, the defendant is in no position to contend that the plaintiff failed to mitigate. Nor will the award be reduced on account of damages the defendant could have avoided as easily as the plaintiff.[31]

This was not a case in which a plaintiff breached the contract and a defendant failed to mitigate. Both parties brought a breach of contract claim. The jury found that both parties breached the contract. Plaintiff breached when they charged for services they did not provide.

---

[29] *Loyal Christian Ben. Ass'n v. Bender*, 493 A.2d 760, 763 (Pa. Super. 1985).
[30] *Carl Beasley Ford, Inc. v. Burroughs Corp.*, 361 F. Supp. 325, 335 (E.D. Pa. 1973).
[31] *S.J. Groves & Sons Co. v. Warner Co*, 576 F.2d 524, 530 (3d Cir. 1978).

Defendant breached when it withheld payment for work in which Plaintiff had completed. I find that the instruction was warranted and appropriate.

### 5. Jury's Verdict

Defendant claims that the jury's verdict is fundamentally inconsistent and a new trial must ordered. Plaintiff contends the jury's verdict that both parties breached does not constitute an inconsistent verdict.

The Third Circuit has held "[an] inconsistent general verdict may constitute grounds for ordering a new trial."[32] The Third Circuit has also held, "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries to be overturned or shocks our conscience."[33]

I find that that the jury's verdict is not fundamentally inconsistent. A reasonable juror could find that both parties have breached a contract. Here, the verdict was not a miscarriage of justice. Plaintiff was found to have charged $676,250.00 for pump down services during its course of business with Defendant. Defendant withheld payment of $1,651,250.00 to remedy Plaintiff's charges.

### 6. Motion for Attorney's Fees

Defendant argues that they are entitled to attorney's fees due to Plaintiff's breach of the MSA. Plaintiff did not respond.

---

[32] *Mosley v. Wilson*, 102 F.3d 85, 91 (3d Cir. 1996).
[33] *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

Attorney's fees may be awarded where there is a clear agreement of the parties.[34] "Contracting parties may structure their agreement for the recovery of attorney's fees as they choose, and the Court should enforce such unambiguous contracts as they are written."[35]

Defendant claims that sections 6.2 and 3.2 of the MSA are controlling and it is entitled to attorney's fees. Defendant relies on *United States v. Travelers Cas. & Sur. Co. of Am.*,[36] where a defendant recovered attorney's fees under the contract even though they were not the prevailing party. There is a key distinction between *Travelers Cas. & Sur. Co. of Am.* and this case. In *Traveler Cas. & Sur. Co. of Am.* the court found that claims brought by the contractor included failure to perform under the subcontract. The court found, "[t]here can be no question that [Plaintiff's] performance—and, indeed, its failure to perform—was at issue in the instant action."[37] Performance isn't an issue in this case.

Section 6.2 of the MSA provides Defendant with the ability "to pursue any other remedy provided under the Contract documents or available at law or equity and recover all expenses incurred by [Defendant] arising from [Plaintiff's] default… including attorney's fees and expenses."[38] Defendant claims that Section 3.2 allowed it to withhold payment if Plaintiff failed to perform in accordance with the Purchase Order. Section 3.2(G) appears to be the mount Defendant has placed its saddle on to argue this point. The evidence at trial established that Plaintiff carried out all the work in accordance with the Purchase Orders to the satisfaction of the Defendant. This case is strictly a breach of contract case involving over-billing and subsequent nonpayment. There was no question about Plaintiff's performance under the contract. The

---

[34] *United States v. Travelers Cas. & Sur. Co. of Am.*, No. 06-CV-0234, 2010 WL 3324922 (W.D. Pa. Aug. 20, 2010).
[35] *Id.*
[36] *Id.*
[37] *Id.* at 6.
[38] Doc. No. 49, Ex. 1.

11

contract provides no specific clause for which Defendant could withhold payment for overbilling.

Based on the evidence, jury's verdict, and subsequent briefing I find that both parties are to bear their own costs of litigation in this case. Defendant's Motion for Attorney's Fees is DENIED. Although Plaintiff has not filed a brief on attorney's fees in this case it could be found to be the substantially prevailing party which attorney's fees are "left to the trial court's discretion."[39] Just as the jury verdict appear to have been a wash, so too are attorney's fees. Each side must bear its own attorney's fees and costs.

## CONCLUSION

Plaintiff is entitled to an award of $1,651,250.00 on its breach of contract claim. Defendant is awarded $676,250.00 on its breach of contract claim. Each side must bear its own attorney's fees and costs.

IT IS SO ORDERED this 26th day of April 2019.

                                            Billy Roy Wilson
                                            UNITED STATES DISTRICT JUDGE

---

[39] *Zavatchen v. RHF Holdings, Inc.*, 907 A.2d 607, 610 (Pa. Super. Ct. 2006).